Hon. EDGAR N. HARWOOD, } Associate Justices.
Hon. WILLIAM H. DE WITT, }

## BOULDER VALLEY DITCH MINING AND MILLING COMPANY, APPELLANT, v. FARNHAM, RESPONDENT.

[Submitted November 24, 1891.   Decided March 21, 1892.]

EQUITY — *Specific performance — Parol contract for sale of lands.* — Where a party enters into the possession of lands under an alleged parol contract for the sale thereof, no right of entry having been given, and having knowledge that the owner denied the alleged contract and had refused to convey the lands, the act of taking possession and erecting valuable improvements upon the land under such circumstances adds no additional weight to the equity of the alleged purchaser in seeking the specific performance of the contract. (*Cartin* v. *Hammond*, 10 Mont. 1, cited.)

SAME — *Same — Part payment.* — Part payment alone, unaccompanied by other equities, is not such a part performance of a parol contract for the sale of lands as will remove the contract from the operation of the Statute of Frauds and sustain an action for specific performance.

*Appeal from Fifth Judicial District, Jefferson County.*

Ejectment.   The cause was tried before GALBRAITH, J.   Defendant had judgment below.

*Thomas Joyes,* for Appellant.

I.   No mere claim of right founded on a verbal contract can constitute adverse possession.   The possession is presumed to follow the legal title which is admitted to be in the plaintiff. To constitute adverse possession there must be actual, open, visible, notorious, and exclusive possession, and it must be continuous and uninterrupted, and under a claim of right to hold the land against him who was seized; and the person against whom it is held must have knowledge, or the means of knowledge, of such occupation and claim of right.   (*Thompson* v. *Pioche,* 44 Cal. 517; *Thompson* v. *Felton,* 54 Cal. 547; *Unger* v. *Mooney,* 63 Cal. 586, 595; 49 Am. Rep. 100; *People* v. *Center,* 66 Cal. 552; Comp. Stats. Mont. § 32, p. 66; Comp. Stats. Mont. §§ 35, 36, p. 67.)

II.   The alleged verbal contract of sale is void because not in writing.   (Comp. Stats. Mont. § 217, p. 651.)   There is no equity alleged or proved to take the case out of the statute. The acts of part performance relied on to take the case out of the statute must be alleged, and proved to have been done *in pursuance of, and in reliance on the contract.*

III.   Possession taken without consent is not part performance.   (*Hoen* v. *Simmons,* 1 Cal. 120; 52 Am. Dec. 291; *Givens* v. *Calder,* 2 Desaus. Eq. 172; 2 Am. Dec. 686.)   Barry never had any possession at all, and defendant took possession without the knowledge or consent of plaintiff.

IV.   Nor is mere payment of a part, or even of the whole, of the purchase money.   (1 Story on Equity Jurisprudence, § 760; *Forrester* v. *Flores,* 64 Cal. 24; *Edwards* v. *Estell,* 48 Cal. 194; *Parke* v. *Leewright,* 20 Mo. 86; *Allen* v. *Booker,* 2 Stew. 21; 19 Am. Dec. 35; Kerr on Fraud, p. 136; *Pinnock* v. *Clough,* 16 Vt. 500; 42 Am. Dec. 524.)

V.   When the part performance consists in the making of valuable improvements upon the premises, the party will not be protected if it appear that when they were made it was known to him that the contract would not be fulfilled by the opposite party.   The improvements must be made with the expectation that the contract will be performed.   (Bigelow on Fraud, p. 389; *Parke* v. *Leewright,* 20 Mo. 86, 87; *McGarrity*

v. *Byington*, 12 Cal. 431; *Kelly* v. *Taylor*, 23 Cal. 15; *Stone* v. *Bumpus*, 40 Cal. 429; Kerr on Fraud, 127, 132, 135, 136; 3 Pomeroy's Equity Jurisprudence, §§ 812, 813, 1409.) This defendant entered into possession and put up his improvements, *knowing that plaintiff would not perform the agreement, and had repudiated it.* This destroys his alleged equity.

VI.   The answer fails to state a defense, because it does not allege that defendant performed the alleged acts of part performance in pursuance of and reliance upon the contract, and also because it does not allege that the consideration was adequate. (*Bruck* v. *Tucker*, 42 Cal. 353, 354.)

VII.   The lapse of time and conduct of Barry show that he had abandoned his claims to the land. (*Brown* v. *Covillaud*, 6 Cal. 566.)

*W. L. Hay*, for Respondent.

I.   The contract had been fully performed by defendant and his grantor, and the court will enforce specific performance. (*Somerville* v. *Trueman*, 4 Har. & McH. 43; 1 Am. Dec. 389; *Townsend* v. *Houston*, 1 Har. [Del.] 532; 27 Am. Dec. 732.)

II.   Where a verbal sale of land is made and valuable improvements put thereon under such verbal sale, courts of equity will enforce specific performance. (Pomeroy's Equity Jurisprudence, § 1409; 2 Warvelle on Vendors, pp. 781, 784–786, and cases cited; *West* v. *Bundy*, 78 Mo. 407; *Pleasanton* v. *Raughley*, 3 Del. Ch. 124; *Neale* v. *Neale*, 9 Wall. 1; *Wetmore* v. *White*, 2 Caines Cas. 87; 2 Am. Dec. 323.)

III.   Inadequacy of price will not affect defendant's right to a specific performance of the contract. (Warvelle on Vendors, p. 764, § 21.)

IV.   Lapse of time does not affect defendant's right to a specific performance. (Pomeroy's Equity Jurisprudence, p. 454, § 408.)

HARWOOD, J.— Action in the nature of ejectment to recover possession of two lots situate in the town of Boulder, Jefferson County. Plaintiff is a corporation organized and existing under the laws of this State.

Defendant, by answer, admits that on July 5, 1888, and at

all times since that date, the legal title to the lots of land described in the complaint was, and now is, in the plaintiff; but denies that at said time, or at any time since, plaintiff was or is entitled to the possession of said land, or any portion thereof; and denies that plaintiff is, or has been since about April, 1883, the owner of said land. Defendant then sets forth in his answer the facts whereby he claims to be the equitable owner of said premises, which facts are alleged in substance, as follows: That during the month of April, 1883, plaintiff, by and through its duly authorized officers and agents, entered into a parol contract for the sale of said described lots to one John Barry, in consideration of the sum of forty dollars, to be paid by him as the whole purchase price thereof; that plaintiff, at the time of making such bargain or contract, received from said Barry the sum of ten dollars as part payment of the purchase price of said lots; and that it was further agreed between plaintiff and Barry that the balance of said purchase price should be paid after plaintiff acquired the government title to said lots of land, and that, on payment of said balance, plaintiff should execute and deliver to said Barry a good and sufficient deed of conveyance conveying said lots to him; that in the year 1883, after plaintiff had acquired title to said lots from the United States government, said Barry tendered the plaintiff, and offered to pay the balance of said purchase price, and requested the delivery to him of a deed of conveyance of said lots, but that plaintiff refused to receive said balance of the purchase price, and refused to execute said deed, which refusal plaintiff has ever since persisted in; that said Barry and this defendant have at all times been ready and willing to pay the balance of said purchase price on delivery of said deed of conveyance; that plaintiff is able to specifically perform said contract of sale, and make said conveyance; that defendant has deposited in court, subject to the order of court and plaintiff, the balance of the purchase price of said lots; that on the 24th of March, 1888, the said John Barry, by his deed of that date, duly executed, bargained, sold, and quit-claimed the said lots to this defendant, and ever since that date defendant has been, and now is, in the actual, exclusive, and adverse possession thereof; that since said date defendant has paid all lawful

taxes and assessments levied upon said lots, and erected permanent improvements thereon of the value of sixteen hundred dollars.   It is further alleged as a defense that at the time of making said contract of sale of said lots to John Barry, in the month of April, 1883, he entered into actual possession thereof, and ever since has held actual, exclusive, and adverse possession thereof, under said contract of purchase, until he conveyed the same to this defendant, since which time this defendant has continued to hold the actual, exclusive, and adverse possession of said lots; and upon this statement of adverse possession defendant avers that plaintiff's action is barred by the provisions of section 29 of the Code of Civil Procedure.

Upon the defense thus set forth defendant demands a decree requiring plaintiff to execute and deliver to him a proper and sufficient deed of conveyance of said lots, or, upon failure so to do, that the court cause the same to be conveyed in the manner usually adopted by courts of equity in such cases.

All the allegations of defendant's answer setting up equitable title in himself are denied by plaintiff's replication.   The only issue tried was that relating to the equitable title alleged by defendant, and all the questions presented for consideration on this appeal relate to said alleged equitable title.

This appeal is taken from an order overruling plaintiff's motion for a new trial, and from the judgment entered in favor of defendant.   Among the assignments of grounds for new trial are: (1) Insufficiency of evidence to justify the verdict, findings, and decisions of the court and jury, and that the same are against law; (2) errors of law occurring at the trial, and excepted to by the party moving for new trial.

The questions presented will be determined by a review of the evidence, to see whether or not the same is sufficient to sustain the equitable title to said land, asserted by defendant.   At the commencement of this inquiry it is proper to observe that the claim set up by defendant ought to be determined by a consideration of the equitable title to said land, if any, acquired by defendant's grantor, Barry, without reference to any acts which have been done by defendant Farnham in the way of taking possession of said land, and erecting improvements thereon, as alleged in his complaint and shown by the evidence.   There is

no reason shown whereby the fact that defendant Farnham entered upon and took possession of said land in 1888, and erected valuable improvements thereon, should be considered as giving greater weight to his alleged equitable title than could have been given to the equitable claims of his predecessor and grantor Barry, who had never taken actual possession of the lots in controversy, or erected any improvements thereon whatsoever. In cases where possession has been delivered by the vendor, under a parol contract for the sale of land, and the purchaser has entered under such conditions, and made valuable improvements, in good faith, relying upon the promise of the vendor to convey, the fact of delivery of possession, and the making of improvements under such conditions, has always been given great weight, as bearing upon the equitable right of the vendee to a decree for specific performance. But not so in cases where a party enters into possession of premises under an alleged right to purchase, where the right of entry has not been expressly given to the purchaser, or where the existence of the alleged contract for sale and purchase is a matter of dispute between the parties, and the party taking possession has notice of such dispute, and good reason to believe that his demand for specific performance of such contract will be resisted. In such cases, where possession is taken and improvements made, the same adds no weight to the equity of the alleged purchaser.

What are the facts upon this point in the case at bar? It is shown by the testimony of said Barry, defendant's grantor, a witness called on behalf of defendant, that the alleged parol contract for the sale and purchase of said lands was entered into by and between Barry and one Elder, the latter acting, or assuming to act, as agent of plaintiff in making said contract. This witness testified that plaintiff had repeatedly, and on every occasion when the matter was presented, emphatically refused to recognize the alleged sale of said lots to Barry by said Elder; refused to receive the balance of the alleged purchase price when the payment thereof was offered; and that plaintiff had at all times, when said contract was asserted by Barry, refused to recognize the same as binding, and refused to ratify or carry the same into effect. The testimony shows that this refusal on the part of plaintiff to recognize said contract had been persisted

in from the time Barry first asserted the contract to plaintiff's officers, about the year 1883 or 1884, to the year 1888, when quit-claim was made by Barry of his interest in said lots to defendant Farnham; that during said period, on several occasions, Barry had demanded of plaintiff's officers a recognition of said alleged contract, and the execution thereof. It is further shown that defendant Farnham was fully aware of the facts relating to said dispute, and the repudiation of said contract by plaintiff, when he procured the quit-claim deed of Barry's alleged interest or claim in and to said lots, in the year 1888, and entered into possession thereof, and proceeded to make the improvements thereon. Indeed, it is shown by defendant's witness, Barry, that defendant Farnham was present on one occasion when Barry requested plaintiff to carry out said alleged contract for the sale of said lots, which was then refused. In this regard, in his testimony, Barry says: "If I could have got Mr. Holter [plaintiff's president] to take the money, I would have built a house on the property. . . . . Farnham and I were present. I could not get a deed for the lots. I went into Helena to pay for the lots, and I could not get a deed, because they would not accept the money. I told Mr. Farnham that. He was willing to take the lots anyway. I told him of the conversation I had with Mr. Holter before, about offering him the money, and that he wouldn't accept it or give me a deed."

With this knowledge, defendant Farnham procured from Barry a quit-claim of his interest or claim in and to said premises, and entered into possession and made the improvements, and now relies upon such entry and improvements as giving additional strength to his alleged equity, over and above the claims of his grantor Barry in respect to the premises in dispute; but we are of opinion that the same should add no weight to the equitable claims which Barry may have acquired by virtue of the alleged purchase, or bargain for purchase, made with Elder in 1883, and that the same ought to be determined entirely upon a consideration of that transaction, and the acts of Barry in reference to said premises.

It is proper to add in this connection, also, that the testimony of defendant Farnham, to the effect that he had completed the

erection and furnishing of a house on said premises before there was any service of papers on him by plaintiff, or any member or agent of plaintiff objected, is without force, in view of defendant's knowledge, shown by the evidence of his witness Barry. Special findings of the jury, Nos. 7, 8, 9, 10, and 24, relate to this point.   The jury found that defendant Farnham erected improvements on said lots of the value of between seventeen and eighteen hundred dollars; that plaintiff had notice or knowledge of the fact that Farnham was constructing such improvements on said lots; that, under all the circumstances, plaintiff was bound to take notice of the fact that defendant Farnham was engaged in erecting buildings on said lots; that plaintiff, neither by agent nor in any other manner, objected to the operations of Farnham on said premises; that plaintiff did not consent to defendant's taking possession of said lots, but never made any objection thereto.   The force and effect of these findings, if any force or effect could be given to them in view of other facts in the case, is neutralized by findings numbered 21, 22, and 23, wherein the jury found to the following effect: That before defendant took possession of said land he knew that plaintiff, through its president, had refused to accept the balance of the money claimed to be due on the lots, and had refused to give Barry a deed for the same; that defendant knew before he commenced to erect improvements upon said land that plaintiff had repudiated the alleged contract; that when defendant entered into possession of said land, and erected improvements thereon, he did not believe that plaintiff acknowledged, or recognized as valid, the contract under which defendant claims.   These latter findings are in harmony with the evidence above recited, showing defendant's actual knowledge of plaintiff's repudiation of the alleged contract for the sale of said lots, which defendant seeks to have enforced; and that plaintiff had expressly refused to recognize or carry out said alleged contract, or receive any payment thereon.   Under these circumstances, defendant cannot assert with any force that he was misled by any act, declaration, or silence of plaintiff in reference to said lots, or the alleged contract for the purchase thereof by Barry; nor can he complain of the fact that plaintiff gave him no notice to vacate said lots, or refrain from tak-

ing possession or making improvements thereon.   It therefore
becomes clear that defendant's operations on said lots in the
year 1888 cannot be considered as strengthening in the least
the equitable claims acquired by Barry through the alleged
contract for purchase made with Elder in 1883.   (*Wood* v.
*Thornly*, 58 Ill. 464; *Parke* v. *Leewright*, 20 Mo. 85; Pome-
roy's Specific Performance of Contracts, 126–129; Pomeroy's
Equity Jurisprudence, §§ 812, 813, 1409; *Cartin* v. *Hammond*,
10 Mont. 1.)

Did Barry acquire such equitable rights in and to said
premises as would have entitled him to a decree for specific
performance?   It has been said, and advisedly, upon careful
consideration of the case, that Barry neither went into actual
possession of said premises, nor made any improvements thereon.
The jury returned a finding to the effect that Barry went into
possession of said land on making the bargain with Elder for
the purchase thereof, in 1883.   We are unable to find any evi-
dence in the record to support such a finding.   There is ample
evidence showing the contrary fact, and no evidence in support
of it to raise a conflict on that point.   Indeed, it would seem,
from the presentation of the case made in the brief of counsel
for respondent, that the allegation of Barry having taken and
held adverse possession of said lots, as averred in the answer, was
abandoned, for the reason, no doubt, that there was no evidence
produced to support that allegation.   The evidence shows, with-
out controversy, that when the alleged parol bargain was made
by Barry with Elder for the purchase of said lots, the same had
not been platted as a portion of the town of Boulder.   Nor
was the same platted until the year 1887.   It is further shown
that up to the year 1888, when defendant Farnham commenced
to build thereon, said land was as bare as the open prairie lands
in that vicinity; "that said lots were simply unimproved vacant
lands."   It is not asserted anywhere in the evidence that any
agreement was made to the effect that Barry should have im-
mediate possession of said lots, or that he ever entered upon
and took actual possession thereof; nor is it asserted that Barry
did any act in reference to said lots, in person or by agent,
which can be construed as taking and holding actual possession
thereof.   Under these circumstances, we must presume that the

possession remained with the holder of the legal title thereof. (*Lamme* v. *Dodson,* 4 Mont. 560.)

As seen by the testimony of Barry, he refrained from building on said lots, because the validity of the alleged contract for the sale thereof to him was disputed by plaintiff, and in this he acted with more prudence than defendant Farnham.   The only act which Barry did, by way of part performance of the alleged parol contract for the purchase of said lots, was the payment of ten dollars on the purchase price alleged to have been agreed upon therefor.   Of course, this was in fact no payment, so far as plaintiff was concerned, unless Elder was authorized to act for plaintiff in making such negotiation and receiving such payment.   But even granting, for the purpose of the discussion of this point, that Elder had such authority, still part payment alone is not such part performance of a parol contract for the sale of real estate as will sustain an action for specific performance of the contract, because the party aggrieved has an adequate remedy in damages.   (*Ducie* v. *Ford,* 8 Mont. 233, and cases cited; *Parke* v. *Leewright, supra;* Pomeroy's Specific Performance of Contracts, § 112, and cases cited.   See, also, *Townsend* v. *Houston,* 1 Har. [Del.] 582; 27 Am. Dec. 732, followed by the editor's note, in which is gathered a multitude of cases, to the effect that payment of part or the whole of the purchase price, unaccompanied by other equities, is not sufficient to take a parol contract out of the operation of the Statute of Frauds.)

It is needless to go further in the consideration of this case to find whether or not it is shown that Elder was authorized to make contracts for the sale of plaintiff's land at the time said contract is alleged to have been made, because, as before observed, granting that point, defendant's case is not sufficient to support a decree for specific performance.

The defense set up in this action is purely an equitable one, and the facts upon which defendant is entitled to rely to support his equitable title, when admitted, are not sufficient to sustain a decree in his favor.   The findings of the jury in this case, relating to defendant's equitable claims, were advisory. We therefore conclude, upon a full consideration, that the court should have disregarded certain special findings of the jury,

above set out, which are unsupported by evidence, and should have pronounced judgment on the remaining findings in favor of plaintiff.

It is therefore ordered that the case be remanded, with directions to the court below to set aside and vacate the judgment entered in said action, and enter judgment in favor of plaintiff, including costs.

*Reversed.*

BLAKE, C. J., and DE WITT, J., concur.